Filed 12/23/22  In re A.H. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>D.D.,<br><br>        Objector and Appellant. | A164844<br><br>(Alameda County Super. Ct. No. JD033768-01) |

D.D. (Mother) appeals from a combined jurisdictional and dispositional order removing her daughter, A.H., from her custody and ordering family reunification services.  Her contention on appeal is that the Alameda County Social Services Agency (the Agency) did not comply with requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law and that the juvenile court erred in ruling ICWA did not apply.  Specifically, she argues that the Agency failed to satisfy its initial duty to inquire regarding A.H.'s

1

possible Indian ancestry under Welfare and Institutions Code[1] section 224.2, subdivision (b). The Agency claims that it complied with its duty of initial inquiry, but alternatively argues that any error was harmless. We conclude that, because the juvenile court failed to ensure that the Agency fulfilled its duty of inquiry under section 224.2, subdivision (b), there was not substantial evidence supporting the court's finding that ICWA did not apply, and the error was not harmless. We conditionally reverse the juvenile court's order and remand only for compliance with ICWA and related California law.

## BACKGROUND[2]

On July 19, 2021, the Agency filed a petition on A.H.'s behalf pursuant to section 300, subdivisions (b) and (g). It later filed a first and second amended petition.

In advance of the detention hearing, the social worker questioned Mother regarding her Indian heritage. Mother denied any such heritage. At the initial detention hearing, Mother was present by phone, and paternity findings were deferred. A continued detention hearing was held the next day with Mother present by video, along with the maternal grandmother and maternal aunts.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Because Mother's sole contention on appeal is that the Agency failed to comply with its duty of inquiry under section 224.2, we limit our discussion of the facts and procedural history to the information necessary to determine that issue.

The paternal grandfather contacted the Agency in July 2021 after being notified of the dependency by a maternal relative. He told the Agency that he had been part of A.H.'s life since she was an infant, and Mother had left Texas with A.H. three weeks earlier. He sought placement and missed his granddaughter.

Father, who lived in Texas, contacted the Agency on August 3, 2021, and reported that he had Indian ancestry in an unknown tribe. On the same date, the Agency mailed the ICWA-030 Notice of Child Custody Proceeding for Indian Child to the Bureau of Indian Affairs (BIA). The parents' information was listed, along with the name of a paternal grandmother, but the notice contained no other information regarding relatives. On August 13, 2021, the Agency filed a response from the BIA stating that the notice contained insufficient information to determine tribal affiliation.

Some, but not all, of the Agency's reports during the dependency contain the statement that, on December 15, 2021, the Agency resent notice to the BIA. The parties agree that the record does not include a copy of any documents allegedly sent to the BIA in December 2021.

At the initial August 10, 2021, jurisdiction hearing, Father was present by video, and the court elevated him to presumed father status. The maternal grandmother and a maternal aunt were present by phone. The maternal grandmother and aunt participated in some of the hearings and had contact with the Agency during the dependency. Although Father became

3

incarcerated during the dependency, the paternal grandfather participated in some of the hearings and had contact with the Agency during the dependency.

The Agency's reports recommended that the court find that ICWA did not apply in A.H.'s case, but the recommendations reflected that they were premised on Mother's information only. In March 2022, the court sustained some of the allegations in the operative petition, declared A.H. to be a dependent, removed her from Mother's custody, and ordered reunification services for both parents. The court found that ICWA did not apply, and no further notice under ICWA was required.

## DISCUSSION

Mother contends that the Agency did not conduct an adequate inquiry into A.H.'s possible Indian ancestry, and that the juvenile court failed to ensure the Agency fulfilled its duty under California law. We agree with these contentions.

## I. Applicable Law

Congress enacted ICWA to further the federal policy of having Indian children remain in the Indian community. (See *In re A.C.* (2021) 65 Cal.App.5th 1060, 1068 (*A.C.*).) "California has adopted statutes and rules that 'implement, interpret, and enlarge upon' ICWA." (*Ibid.*) Under state and federal law, whenever "the court knows or has reason to know that an Indian child is involved" in a proceeding that could result in termination of parental rights, notice of the proceedings must be given to the relevant tribe or tribes. (25 U.S.C. § 1912(a); accord, § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).)

4

"At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

Additionally, under state law, the juvenile court and the social services agency "have an affirmative and continuing duty to inquire whether a child for whom a [dependency] petition . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) As part of this duty, when a child is placed in its temporary custody, the social services agency must ask, not only the parents, but also the child's extended family members, whether the child may be an Indian child. (§ 224.2, subd. (b).) "If the parent . . . does not appear at the first hearing, or is unavailable at the initiation of a proceeding, the court must order the [social services agency] to use reasonable diligence to find and inform the parent . . . that the court has ordered the parent . . . to complete . . . form ICWA-020[ ]." (Cal. Rules of Court, rule 5.481(a)(3).) The social services agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status . . . ." (Cal. Rules of Court, rule 5.481(a)(5).)

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports" the court's

5

ICWA finding. (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, rev. granted Sept. 21, 2022, S275578 (*Dezi C.*).)

## II. Compliance with California Law

There is no evidence in the record to show that the Agency inquired with available extended family members about A.H.'s potential Indian ancestry. The Agency argues that its inquiry was sufficient because, although Father said he had Indian ancestry, he did not name a tribe or relative who may have information. At the same time, however, the Agency concedes that "there is no documentation in the record before this court that the extended family that were involved in the case were asked about potential Indian ancestry." There is evidence that A.H.'s paternal grandfather, maternal grandmother, and maternal aunt were available and participated in this dependency, even in its early stages. The Agency's duty to make an initial inquiry into A.H.'s possible Indian ancestry applies to these "extended family members." (§ 224.1, subd. (c) ["extended family member" is defined as provided in 25 U.S.C. § 1903]; 25 U.S.C. § 1903(2) ["extended family member" includes child's aunts and grandparents].) The Agency thus failed to comply with its duty of initial inquiry. (Cf. *In re J.C.* (2022) 77 Cal.App.5th 70, 78–79 (*J.C.*) [error in finding ICWA did not apply where agency had regular contact with paternal grandmother and maternal grandmother was readily accessible, but it did not ask them about possible Indian ancestry].) Further, the reporter's transcript of Father's first appearance does not reflect that the court made the requisite inquiries of him under subdivision (c) of

6

section 224.2.[3]  Accordingly, we conclude that the juvenile court erred in making its March 22, 2022, ICWA findings.

## III.    Harmless Error

Having found state law error, we next consider whether the error was harmless.  (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777.)  The parties and various appellate courts dispute the test that applies to assess harmless error.  There appear to be at least four different rules[4] used by appellate courts to determine whether an ICWA inquiry error was harmless.  (*Dezi C.*, at p. 777 [reviewing three tests and proffering a fourth].)

At one end of the continuum is the "automatic reversal" rule, which mandates reversal if the agency's initial inquiry is deficient and thus infects the juvenile court's ICWA finding.  (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 777; see *J.C.*, *supra*, 77 Cal.App.5th at pp. 80–82.)  "Under this test, reversal is required no matter how 'slim' the odds are that further inquiry on remand might lead to a different ICWA finding by the juvenile court."  (*Dezi C.,* at p. 777.)  At the opposite end of the continuum is the "presumptive affirmance" rule.  (*Dezi C.*, at p. 777; see

[3] The record does not include the transcript from Mother's first appearance in July 2021.

[4] Our colleagues in Division One recently adopted a fifth approach.  *In re S.H.* (2022) 82 Cal.App.5th 166, 171, held that "when a social services agency accepts its obligation to satisfy its inquiry obligations under ICWA, a reversal of an early dependency order is not warranted simply because a parent has shown that these ongoing obligations had not yet been satisfied as of the time the parent appealed."  The rule from *S.H.* would not apply here because the Agency does not concede its inquiry's invalidity or indicate that it will undertake an acceptable inquiry.

7

*A.C.*, *supra*, 65 Cal.App.5th at pp. 1065, 1073.) Under this rule, if the agency's initial inquiry is deficient, the defect will be treated as harmless unless the parent comes forward with a proffer on appeal as to why the further inquiry would lead to a different ICWA finding. (*A.C.*, at p. 1069.) In between these rules is the self-described "third option," which has been termed the "readily obtainable information" rule, whereby a defect in the agency's initial inquiry is harmless unless "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" and that the "probability of obtaining meaningful information is reasonable." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*); see *Dezi C., supra*, 79 Cal.App.5th at p. 778.)

*Dezi C.*, *supra*, 79 Cal.App.5th 769 adopted a fourth rule. There, the court found that failure to conduct a proper initial inquiry under ICWA is harmless unless "the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Dezi C.*, at p. 779; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1014 [endorsing this part of *Dezi C.*'s test].) As explained in *Dezi C.*, this test is "outcome focused," asking whether "it is reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that is, the outcome) of the juvenile court's ICWA finding," and limiting a remand for further inquiry "to those cases in which the record gives the reviewing court a reason to believe that the

8

remand may undermine the juvenile court's ICWA finding."
(*Dezi C.*, at pp. 781–782.)

Mother urges us to adopt the "automatic reversal" rule or the middle ground under *Benjamin M.*, and the Agency champions the *Dezi C.* rule. We need not decide between the rules urged by the parties because the error was not harmless under any of the standards they advance. Unlike *Dezi C.*, where both parents signed ICWA-020 notices attesting that they had no Indian ancestry (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 786), the record here contains no such form from Father, and the Agency's recommendations to the court for its ICWA findings were premised on Mother's ICWA-020 form alone. Moreover, Father informed the Agency that he had Indian heritage, although he did not know the tribal affiliation. Under the "automatic reversal" rule, the error was clearly prejudicial. Under the *Benjamin M.* approach, the paternal grandfather was available, the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether A.H. is an Indian child, and the probability of obtaining meaningful information is reasonable. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) And under *Dezi C.*, there is reason to believe that remand may undermine the juvenile court's ICWA finding. (*Dezi C.*, at p. 779 ["a reviewing court would have 'reason to believe' further inquiry might lead to a different result if the record indicates that someone reported possible American Indian heritage and the agency never followed up on that information."].)

The finding of prejudice from the error as to the ICWA inquiry for Father requires remand. However, we also observe that, while the Agency's reports state that Mother completed the ICWA-020 form, the record does not include that form. Given that remand is required for the Agency to complete a reasonable initial inquiry of A.H.'s paternal family members, in the interest of completeness and to avoid any possible further delays in the case, we also instruct the juvenile court on remand to order the Agency to file Mother's completed ICWA-020 form for the record and to ensure that the Agency conducts any further inquiry of maternal relatives that may be necessary to satisfy ICWA and California law.

## DISPOSITION

The jurisdictional and dispositional order is conditionally reversed, and the matter remanded to the juvenile court for the limited purpose of ensuring compliance with the inquiry provisions of section 224.2 and, if necessary, the notice provisions of section 224.3. If the juvenile court issues an order determining that ICWA does not apply, the jurisdictional and dispositional order shall be reinstated. If the court determines ICWA does apply, it shall proceed in conformity with ICWA and related state law.

BROWN, J.


WE CONCUR:

POLLAK, P. J.
GOLDMAN, J.
*In re A.H.* (A164844)

10